Leslie V. NELSON, Plaintiff–Appellant,

v.

HOLMES FREIGHT LINES, INC., and International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local Union No. 17, Defendants–Appellees.

No. 93–1017.

United States Court of Appeals, Tenth Circuit.

Oct. 7, 1994.

Jeffrey Menter, Greenwood Village, CO, for plaintiff-appellant.

R. Keith Hotle, Davis, Graham & Stubbs (Thomas P. Johnson and Katherine A. Cvengros, with him on the briefs), Denver, CO, for defendant-appellee Holmes Freight Lines, Inc.

Steven M. Segall, Lakewood, CO, for defendant-appellee Intern. Broth. of Teamsters, Local Union No. 17.

Before MOORE, Circuit Judge, and McWILLIAMS, Senior Circuit Judge, and COOK,[1] Senior District Judge.

H. DALE COOK, Senior District Judge.

Appellant challenges the trial court's grant of summary judgment to defendants, in which the trial court found that the uncontroverted evidence did not support appellant's hybrid § 301/breach of fair representation claims against the defendants. Finding no error in the trial court's determination, we affirm.

## I.

Appellant was employed as a truck driver by defendant-appellee Holmes Freight Lines, Inc. ("Holmes"), a trucking company. The International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Union, Local No. 17 (the "union") is appellant's designated representative under a collective bargaining agreement between Holmes and the union.

On the night of October 14, 1991, a Holmes security guard witnessed appellant removing

---

1. The Honorable H. Dale Cook, Senior District Judge, United States District Court for the North-    ern District of Oklahoma, sitting by designation.

six jars of mustard from a box near a dumpster, and placing the jars in his lunch pail. The guard also saw appellant moving another case of mustard jars away from the dumpster and stowing that box under a nearby truck. The appellant stated that he believed that the boxes of mustard jars were in or near the dumpster because they were "salvage" goods, which could be removed from the dumpster by Holmes employees for their personal use.

The guard notified a Holmes manager, Larry Baker ("Baker"), of appellant's actions. Baker investigated the boxes containing the mustard jars and ascertained from the Holmes supervisor on duty that night that appellant had not been given permission to remove the mustard jars, and that the jars were not "salvage" goods. Based upon his investigation, Baker believed that appellant had stolen the mustard jars.

On the next morning, October 15, 1991, the union steward, Gary Heitzman ("Heitzman"), contacted the Union business agent, Albert Mares ("Mares"), and asked Mares to come to Holmes' facility to deal with a labor problem. Upon Mares' arrival at Holmes, Baker told Mares that appellant had stolen some mustard jars. Mares then made his own investigation of Baker's allegations, interviewing other Holmes employees about the alleged theft.

When appellant arrived for work at Holmes later that day, he met with Baker, Mares and Heitzman in Baker's office. Baker informed appellant of his belief that appellant had stolen the mustard jars, and offered to allow appellant to resign rather than face immediate discharge for dishonesty.[2] Mares and Heitzman then went with appellant to the dumpster, where appellant repeated his belief that the jars were "salvage" goods, available for Holmes' employees to take. From his previous investigation that morning, Mares accepted appellant's belief that the jars were "salvage" goods, and attempted to convince Baker that the jars were such. Baker remained convinced that the mustard jars were not "salvage" and stated that if

appellant did not agree to resign, that appellant would be charged with the theft of the jars. Mares then took appellant to another room to discuss the situation privately.

Upon entering the room, appellant announced to Mares that he would resign rather than having a criminal record. Although Mares informed appellant that he could not advise appellant whether or not to resign, Mares stated that if he were in appellant's position, he would not resign. Mares also told appellant that he would file a grievance on appellant's behalf, whether appellant resigned or was discharged.

The collective bargaining agreement between Holmes and the union provides that an employee's exclusive remedy for an employer's alleged breach of the agreement is to have the dispute heard before a grievance panel known as the Joint State Committee. The decision of the panel is final and binding upon the company and the employee. This grievance procedure in the agreement addresses situations involving discharge only; situations involving resignations or "constructive discharge" as alleged by appellant are not addressed in the agreement.

After appellant resigned from Holmes, the union processed his grievance, which resulted in the matter being brought before the grievance panel specified in the collective bargaining agreement, the Colorado–Wyoming Joint State Committee. That committee heard appellant's grievance against Holmes on November 6, 1991. The union, through Mares, represented appellant at that proceeding. The Joint Committee determined that appellant's grievance was improperly before it, since appellant had resigned, rather than being discharged from Holmes.

Appellant then filed this action in the U.S. District Court for the District of Colorado, alleging that Holmes had breached the collective bargaining agreement by forcing appellant to resign. Appellant also alleged that the union had breached its duty of fair representation to him, by Mares' failure to properly inform appellant that his grievance rights

2. The collective bargaining agreement provides in Article 46 that "dishonesty" is a ground for discharge without warning notice.

would be forfeited if appellant resigned, rather than be discharged. The district court determined that appellant had failed to demonstrate the union's breach of fair representation and granted summary judgment to Holmes and the union on all claims of appellant's complaint.[3]

## II.

We review the district court's entry of summary judgment *de novo,* applying the same standard used by the district court. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990). We view the record and all inferences therefrom in the light most favorable to the party opposing the motions for summary judgment. *Deepwater Inv., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). However, the mere existence of an alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

Appellant's suit may be characterized as a "hybrid" action under § 301 of the Labor Management Relations Act (29 U.S.C. § 185). In a hybrid action, an employee's claims are directed against both the former employer and the union, and allege a violation of the collective bargaining agreement by the employer and a breach of the duty of fair representation by the union. *Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522, 530 (10th Cir.1992). Although the claims against the employer and the union are "inextricably interdependent," *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983), the appellant must establish the failure of the union to fulfill its duty of fair representation to succeed in his hybrid action. *Mock,* 971 F.2d at 531.

A breach of the duty of fair representation occurs when the union's conduct toward the employee is "arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). In *Aguinaga v. United Food & Commercial Workers Int'l Union,* 993 F.2d 1463 (10th Cir.1993), we noted the limited scope of arbitrariness and discrimination as applied to actions by the union:

> A union's actions are arbitrary only if, 'in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness" as to be irrational.'... A union's discriminatory conduct violates its duty of fair representation if it is 'invidious.'

*Id.* at 1470 (quoting *Air Line Pilots Ass'n Int'l. v. O'Neill,* 499 U.S. 65, 67 & 81, 111 S.Ct. 1127, 1128 & 1137, 113 L.Ed.2d 51 (1991). Acts by the union which are merely negligent do not state a claim for breach of a duty of fair representation. *United Steelworkers of America, AFL–CIO–CLC v. Rawson,* 495 U.S. 362, 372–73, 110 S.Ct. 1904, 1911–12, 109 L.Ed.2d 362 (1990).

In his second amended complaint, appellant appears only to charge the union with arbitrary and discriminatory actions in handling his grievance. No allegation of bad faith on the part of the union is evident in appellant's second amended complaint.[4] On

---

**3.** In his second amended complaint, appellant listed a third claim for relief which alleged that Holmes had blacklisted appellant and prevented him from being hired by other employers, in violation of Colorado state law, C.R.S. § 8–2–114. The Magistrate Judge in his recommendation to the district court found that that Colorado statute provided no private right of action to appellant. Appellant did not object to the Magistrate Judge's recommendation and the district court adopted the Magistrate Judge's recommendation to dismiss the blacklisting claim. On appeal, appellant has not contested the dismissal of the blacklisting claim.

**4.** Appellant alleges in his second amended complaint that the union acted "perfunctorily" in its handling of his grievance, thereby breaching its duty of fair representation. In *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court recognized that "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Id.* at 191, 87 S.Ct. at 917. In *Poole v. Budd Co.,* 706 F.2d 181 (6th Cir.1983), the Sixth Circuit stated that a union acts arbitrarily only if "it handles a grievance in a 'perfunctory' manner, with caprice or without rational explanation." *Id.* at 183. From our review of the record, we cannot agree with appellant that the union handled his grievance in a perfunctory manner. To the contrary, the rec-

appeal, appellant contends that Mares' failure to apprise appellant of the loss of the grievance procedure upon appellant's resignation from Holmes breached the duty of fair representation. Appellant also asserts that the union, through Mares, failed to make a reasonable investigation regarding resignations under the collective bargaining agreement, before allowing appellant to resign from Holmes.

However, appellant has not pointed to any specific fact to convince us that Mares' failure to ascertain the resignation and grievance procedures aspect of the collective bargaining agreement was either arbitrary or discriminatory. Even at the time of his deposition in this action, Mares still believed that he could bring a grievance on behalf of an employee who resigned. Mares testified in his deposition that with 25 years of service with the union, he had never had to deal with a discharge grievance, much less a situation involving a resignation. In his deposition testimony and his statements on the record to the grievance panel in his representation of appellant's grievance, Mares appeared completely sympathetic and supportive of appellant's position. Mares also told appellant that he would not resign if he were appellant. Mares obviously erred in his assessment of the collective bargaining agreement's provisions, but appellant has not shown that Mares did so arbitrarily or to discriminate against appellant. From our review of the facts, we can only conclude Mares' interpretation of the collective bargaining agreement was erroneous. Even if the error were negligent, such negligence does not support a claim for breach of the union's duty of fair representation.

Appellant also contends on appeal that the facts in this case present a jury question as to the alleged breach of the duty of fair representation, which precluded the district court's grant of summary judgment and dismissal of the case. However, appellant has not identified a specific factual issue, nor pointed to a single fact which might even suggest the presence of a factual issue. The

record shows no past practices or conduct of the union as to the handling of discharges or "constructive discharges" grievances from which we could conclude that the union treated appellant's grievance arbitrarily or discriminatorily. Appellant admits in his brief that he, as the non-moving party, must set forth specific facts showing that there is a genuine issue for trial. We find that appellant has not done so, and thus the district court properly entered summary judgment against him on his § 301 hybrid action.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

ord shows a prompt and diligent effort by the union business agent, Mares, to have appellant's

grievance heard and decided by the panel.