**In re Phillip Charles TILLEY, Debtor.**

**Betty Bryant, as Conservator for Everald Grace Nichols, Plaintiff,**

**v.**

**Phillip Charles Tilley, Defendant.**

**Betty Bryant, as Conservator for Everald Grace Nichols, Plaintiff,**

**v.**

**Michael Robert Lynch, Defendant.**

**Bankruptcy No. 01–21789 EEB. Adversary Nos. 01–1531 EEB, 01–1530 ABC.**

United States Bankruptcy Court, D. Colorado.

Nov. 25, 2002.

John Case, John L. Latta, Denver, CO, for Plaintiff.

Garry R. Appel, Denver, CO, for Defendant.

## ORDER DENYING OBJECTION TO DISCHARGEABILITY

ELIZABETH E. BROWN, Bankruptcy Judge.

Plaintiff is seeking a determination that the debt owed to her is nondischargeable under 11 U.S.C. § 523. Defendant has requested summary judgment against Plaintiff, claiming that Plaintiff has no evidence to establish an essential element of her claims under Section 523,[1] namely the requisite mental state or scienter. This Court must decide when it is proper to grant summary judgment on the basis of sufficiency of the evidence as to a defendant's state of mind. For the reasons set forth below, the Court finds that, although summary judgment should be granted with great caution when state of mind is at issue, there is no triable issue of fact in this case as to any fraudulent or willful and malicious intent to injure Plaintiff.

## I. GENERAL BACKGROUND

Plaintiff is the Conservator of Everald Grace Nichols ("Nichols"). For some period of time, Charles Richard Lynch ("Senior Mr. Lynch"), acted as attorney-in-fact for Nichols. While acting in this capacity, Senior Mr. Lynch sold her home and deposited the sales proceeds into an account to which he had access and control. The parties do not dispute that Senior Mr. Lynch then embezzled Nichols' funds. Some of these funds eventually made their way into the hands of Defendant. The central issue is whether Defendant knowingly received embezzled funds and participated in their subsequent dissipation and use.

Senior Mr. Lynch is not a party to this action. His son, Michael R. Lynch ("Lynch"), is a defendant in this consolidated action, but he is not a party to the pending motions. The Court is aware from Lynch's pleadings in this case, that at some point in time, and for crimes unspecified, Lynch was given a lengthy prison sentence, which he is presently serving. Prior to his incarceration, Lynch and Defendant lived together off and on over the course of twenty years. For approximate-

---

1. All references to "Section" shall refer to Title 11, United States Code, unless otherwise noted.

ly the past fifteen years, Defendant had allowed Lynch to handle all of his personal financial affairs, as well as those of Defendant's businesses, "Estate Curators" and "A Bygone Era," an antiques store. At his deposition, Defendant testified that he intended to make Lynch his partner in the Estate Curators business, but never actually did so. Lynch, however, had control over the finances of both businesses. Apparently, the relationship between Lynch and Defendant was akin to many marriages where one spouse handles all of the finances for both parties, and the other spouse merely signs the necessary paperwork as requested.

Defendant received over $120,000 of Nichols' funds. Some funds were transferred to A By Gone Era, some to Estate Curators, and others to Defendant. The bulk of the funds, totaling $100,000, were transferred by means of two checks made payable to Defendant, issued by Senior Mr. Lynch. At his deposition, Defendant testified that he was handed these checks by Lynch, who said that they represented a loan from his father. Defendant had never requested a loan and was not even sure why they needed the loan, but it had been offered by Senior Mr. Lynch, and Lynch then redirected the funds to pay off encumbrances against Defendant's personal residence. Although the home was titled in Defendant's name only, Lynch had used it as collateral for a surety bond posted for Lynch's benefit.

Plaintiff asserts that the undocumented loan from Senior Mr. Lynch was a sham and that Defendant's receipt of these checks demonstrates his participation in the embezzlement, larceny or conversion of Nichols' funds. Defendant maintains that he allowed Lynch to run all of his finances and that he did not participate in either the acquisition or the subsequent redirection of these funds, nor did he question Lynch's actions. Defendant does acknowledge that he had contemporaneous knowledge of his receipt of these two checks and that he benefitted from them. He denies that he had any knowledge, at the time, of the misappropriation of the funds from Nichols.

The two checks from Senior Mr. Lynch, totaling $100,000, were two credit union checks that do not bear the name of, or make any reference to, Nichols. Apparently, there are numerous additional checks, however, that are drawn directly on her account, in various small denominations, over a period of time from June 1999 until October 1999. With one exception, these additional checks were signed and endorsed by Lynch, and bear no endorsement signature of the Defendant. These checks show signatures of Lynch as "POA," rather than Senior Mr. Lynch. Neither party has explained the circumstances surrounding the transfer of the power of attorney from Senior Mr. Lynch to Lynch. One check, in the amount of $750, drawn on Nichols' account, signed by Lynch as "POA," and made payable to Defendant, may bear Defendant's signature in the endorsement. Plaintiff made no mention of this fact in either her brief or in the deposition excerpts she selected to attach to her brief. Every other check, whether payable to Defendant or one of his businesses, was endorsed by Lynch alone and provides nothing to contradict Defendant's statement that he allowed Lynch to handle all of his finances for him.

In the original Complaint, Plaintiff asserted only one claim against Defendant, a claim for nondischargeability of debt under Section 523(a)(4).[2] Plaintiff did not specify

---

**2.** Plaintiff has never sought to impose a constructive trust on Defendant's home or other assets.

which type of Section 523(a)(4) claim was involved, namely whether it involved embezzlement, larceny or breach of fiduciary duty. More significantly, the original Complaint failed to assert any allegations as to Defendant's involvement or conduct, but only asserted that Defendant benefitted from the embezzled funds. Accordingly, Defendant filed a Motion for Summary Judgment, on the grounds that mere receipt of stolen funds is insufficient to establish a claim for nondischargeability. In response, Plaintiff sought to and tendered an Amended Complaint, adding allegations regarding Defendant's involvement and additional claims for relief. Defendant opposed the request to amend. This Court held in abeyance its ruling on the Motion to Amend and instead requested that Defendant supplement his Motion for Summary Judgment, to address the allegations in the Amended Complaint, on the basis that, if the proffered amendment could not survive a summary judgment request, then the Motion to Amend would be denied as futile.

The proposed Amended Complaint contains only conclusory allegations that Defendant "appropriated and used" or "took and used" the funds, with "fraudulent intent to deprive Ms. Nichols" of her funds or "with the intent to harm Ms. Nichols." It also asserts that Lynch's fraudulent intent can be imputed to Defendant, but at a hearing on the Motion to Amend, Plaintiff agreed to withdraw this allegation. It further asserts three separate claims, instead of the prior one. The new claims are: (a) larceny under Section 523(a)(4); (b) embezzlement under 523(a)(4); and (c) willful and malicious injury under Section 523(a)(6).

## II. JURISDICTION AND BURDEN OF PROOF

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. A proceeding to determine dischargeability of a particular debt is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(I).

The Bankruptcy Code is intended to "provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'"[3] The "fresh start" policy embodied in the Bankruptcy Code is intended for the "honest but unfortunate debtor."[4] In furtherance of the "fresh start" policy, "[e]xceptions to discharge are construed narrowly, and the burden of proving that a debt falls within a statutory exception is on the party opposing discharge."[5] In this regard, the "standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard."[6]

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standards for Determining Summary Judgment Motions

Federal Rule of Civil Procedure 56(c) provides, in relevant part, that: "[t]he

---

3. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)).

4. *Id.* at 287, 111 S.Ct. 654.

5. *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir.1986); *First Bank of Colorado Springs v. Mullet (In re Mullet)*, 817 F.2d 677, 680 (10th Cir.1987). *See Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 782 (10th Cir. BAP 1998).

6. *Grogan v. Garner*, 498 U.S. at 291, 111 S.Ct. 654.

judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7] In applying this standard, this Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.[8] In the case of Defendant's motion for summary judgment, the Defendant, as movant, bears the initial burden of establishing that summary judgment is appropriate.[9] Since the Defendant would not bear the burden of persuasion in the adversary proceeding, he need not negate Plaintiff's claims, but need only point out a lack of evidence supporting an essential element of Plaintiff's claims.[10] If the Defendant carries this initial burden, Plaintiff, as nonmovant, must then come forward with specific facts showing that there is a genuine issue for trial.[11] To accomplish this, Plaintiff must identify facts by reference to affidavits, deposition transcripts, or specific exhibits.[12] In the context of a nondischargeability suit, the evidence presented must be "viewed consistent with congressional intent that exceptions to discharge be narrowly construed against the creditor and liberally against [sic] the debtor, thus effectuating the fresh start policy of the Code."[13]

Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.[14] Disputes as to immaterial facts will not preclude summary judgment.[15] Should Plaintiff make some showing on a material issue, this Court must consider the standard of proof in the case and decide whether the showing is sufficient for a reasonable trier of fact to find for Plaintiff on that issue.[16] A scintilla of evidence in favor of Plaintiff is not enough to preclude summary judgment.[17] Moreover, should Plaintiff not make a sufficient showing on any essential element of its case, all other facts are rendered immaterial, and summary judg-

7. Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056.

8. *Schwartz v. Brotherhood of Maintenance of Way Employees*, 264 F.3d 1181, 1183 (10th Cir.2001).

9. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir.2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

10. *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir.2000).

11. *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir.) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)), *cert. denied*, — U.S. —, 123 S.Ct. 84, 154 L.Ed.2d 20 (2002).

12. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998).

13. *Taneff v. Hoehn (In re Taneff)*, 190 B.R. 501, 505 (W.D.N.Y.1996) (quoting *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir.1987) and citing *Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583, 588 (5th Cir.1987); *Driggs v. Black (In re Black)*, 787 F.2d 503, 505 (10th Cir.1986); *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986)).

14. *Schwartz v. Brotherhood of Maintenance of Way Employees*, 264 F.3d 1181, 1183 (10th Cir.2001); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

15. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1361 (10th Cir.1993).

16. *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir.1997); *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505.

17. *Lawmaster*, 125 F.3d at 1347; *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

ment is appropriate.[18]

Applying these standards to the facts of this case, the Court finds that Plaintiff has not demonstrated sufficient evidence from which a reasonable trier of fact could find in favor of Plaintiff.

## B. Embezzlement

■ The Tenth Circuit has defined the elements of an embezzlement claim under Section 523(a)(4) as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."[19] This definition breaks down into five elements:

1. Entrustment (property lawfully obtained originally);
2. Of property;
3. Of another;
4. That is misappropriated (used or consumed for a purpose other than that for which it was entrusted);
5. With fraudulent intent.

■ Defendant asserts that Nichols entrusted her home and its sales proceeds to Senior Mr. Lynch, but not to Defendant. In opposing summary judgment, Plaintiff has offered no evidence that Nichols entrusted either her home or its proceeds to Defendant's safekeeping. Nor has Plaintiff offered evidence, direct or circumstantial, that shows Defendant's participation in an embezzlement conspiracy with Senior Mr. Lynch. Accordingly, no reasonable trier of fact could find in favor of Plaintiff on this claim for relief. Some courts have found that the necessary element of scienter may be imputed from the embezzler to his or her spouse or significant other when the spouse or significant other knows of the embezzlement and such knowledge is "concurrent with participation in the use or enjoyment of the stolen property . . . ."[20] They do so, however, not as to a claim of "embezzlement" under Section 523(a)(4), but as to a claim for "willful and malicious injury by the debtor to another entity or to the property of another entity" under Section 523(a)(6).

■ As to the contract to sell Nichols' furniture, Plaintiff has demonstrated that this property was entrusted to Defendant for the purpose of consignment. A few items were sold and Defendant failed to remit those proceeds, totaling approximately $1,500. Since Defendant no longer holds the funds, it seems likely that they have been used or consumed for a purpose other than payment to Nichols. Without evidence of the fifth element, fraudulent intent, these facts only demonstrate a breach of the contract, rather than embezzlement. Plaintiff has offered no other evidence, circumstantial or otherwise, to show fraudulent intent.

## C. Larceny

■ Larceny is defined as the "fraudulent and wrongful taking and carrying away of the property of another with intent to convert it to the taker's use and with intent to permanently deprive the owner of such property."[21] "Larceny"

---

**18.** Doheny v. Wexpro Co., 974 F.2d 130, 133 (10th Cir.1992); Celotex Corp. v. Catrett 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**19.** Klemens v. Wallace (In re Wallace), 840 F.2d 762, 765 (10th Cir.1988) (quoting Great Am. Ins. Co. v. Graziano (In re Graziano), 35 B.R. 589, 594 (Bankr.E.D.N.Y.1983)).

**20.** Synod of S. Atl. Presbyterian Church v. Magpusao (In re Magpusao), 265 B.R. 492, 498 (Bankr.M.D.Fla.2001).

**21.** Pool v. Johnson, 2002 WL 598447, *2 (N.D.Tex.2002) (quoting Smith v. Hayden (In re Hayden), 248 B.R. 519, 526 (Bankr. N.D.Tex.2000)).

and "embezzlement" differ primarily as to whether the debtor originally obtained the funds lawfully or not.[22] Plaintiff's larceny claim suffers from the same failings as its embezzlement claim. Plaintiff has demonstrated no evidence of Defendant's participation in the original taking of Nichols' money. As to the contract to sell Nichols' furniture and the failure to remit the proceeds, the evidence presented supports only a garden-variety breach of contract claim, not larceny, because no evidence has been offered that the original taking was done with the intent to permanently deprive Nichols of this property.

### D. Willful & Malicious Injury/Conversion

Section 523(a)(6) requires proof of: (1) an intentional action by the defendant; (2) done with the intent to harm; (3) which causes damage (economic or physical) to the plaintiff; and (4) the injury is the proximate result of the action by the defendant.[23] If a debtor knows that his spouse or significant other is embezzling funds and then participates in the use or dissipation of them for a purpose other than the intent of the original entrustment to the significant other, then the debtor may be liable for conversion, which is a claim that would satisfy the requirements of a willful and malicious injury to property claim under Section 523(a)(6). To satisfy a *prima facie* case, however, a plaintiff must establish the defendant's knowledge of the embezzlement, not simply his receipt of the embezzled funds, in order to demonstrate the conversion. While larceny, embezzlement and willful and malicious

injury are often established by means of circumstantial evidence,[24] Plaintiff has made an insufficient showing of circumstantial evidence to survive a request for summary judgment in this case.

The Court has considered the excerpts from deposition transcripts and the other exhibits offered by Plaintiff in opposition to the motion for summary judgment, without consideration of the unsupported statements of counsel in Plaintiff's responsive brief. The Court has, as it must, believed every scintilla of Plaintiff's evidence and has drawn every justifiable inference in her favor. Even in that favorable light, the evidence falls short of establishing a claim against this Defendant. The only facts offered in support of Plaintiff's claim are:

1. Senior Mr. Lynch embezzled funds from Nichols;

2. Senior Mr. Lynch's son had a long-term close relationship with Defendant, and Lynch and Defendant had a joint bank account;

3. Senior Mr. Lynch transferred to Defendant $120,000 of Nichols' money. Defendant was aware of his receipt of two checks, totaling $100,000, from Senior Mr. Lynch;

4. Defendant benefitted from his receipt of the funds;

5. Although Lynch told Defendant that the $100,000 represented a loan from his father, there was no loan documentation and no arrangements for its repayment. Furthermore, Defendant had not requested a loan

---

**22.** *Id.*

**23.** *In re Magpusao*, 265 B.R. at 498.

**24.** *Great Am. Ins. Co. v. Graziano (In re Graziano)*, 35 B.R. 589 (Bankr.E.D.N.Y.1983); *First Valley Bank v. Ramonat (In re Ramonat)*, 82 B.R. 714 (Bankr.E.D.Pa.1988); *Clark v.*

*Taylor (In re Taylor)*, 58 B.R. 849 (Bankr. E.D.Va.1986); *Watson v. Buhay (In re Buhay)*, 77 B.R. 561 (Bankr.W.D.Tex.1987); *Skemp v. Michel (In re Michel)*, 74 B.R. 88 (N.D.Ohio 1986); *Damian Mfg. Co., Ltd. v. Corwin (In re Corwin)*, 76 B.R. 221 (Bankr.S.D.Fla.1987).

and apparently had no actual need for a loan;

6. Defendant promised, but failed, to remit sales proceeds to Nichols from the consignment sale of a few items of her personal property, totaling approximately $1,500; and

7. Defendant knew at an undisclosed time that Lynch had been charged with civil and criminal fraud in connection with a car dealership, and that Defendant was initially named as a co-defendant in the civil case. There was absolutely no connection made between this event and the present case, nor was there any showing of a pattern on Defendant's part. Accordingly, the Court finds these facts to be immaterial.

These facts, without more, demonstrate only Defendant's receipt of, and benefit from, Nichols' funds. They do not show that Defendant knew he was receiving embezzled funds. There are no facts from which a reasonable trier of fact could conclude that Defendant knew or even should have known that this money came from Nichols, or even that Defendant knew that Senior Mr. Lynch came by it wrongfully, from whatever source. Plaintiff should have shown at least through circumstantial evidence that there is reason to doubt Defendant's claim that he had no knowledge of the embezzlement. By way of example only, Plaintiff might have shown Senior Mr. Lynch's financial resources generally and that a "loan" or quasi-gift of this magnitude from father to son and son's significant other was out of character or obviously outside the father's means. Through deposition testimony, Plaintiff might have pressed Defendant on why he failed to remit the $1,500 of sales proceeds to Nichols. If the Court had been presented with any evidence from which to infer Defendant's knowledge or intent, it would not be granting summary judgment in this matter.

In determining a motion for summary judgment, the court does not weigh the evidence presented for its persuasiveness or truthfulness. The court looks only to determine whether a genuine issue exists for trial.[25] In other words, has sufficient evidence been presented from which a reasonable trier of fact *could* find in favor of the party on this fact? This places a burden on the nonmoving party to come forward with significant probative evidence in support of a claim on which it has the burden of proof at trial. "The last two sentences of Rule 56(e) were added ... to disapprove a line of cases allowing a party opposing summary judgment to resist a properly made motion by reference only to its pleadings."[26] A motion will not be defeated by "metaphysical doubt" about the facts,[27] "or on the basis of conjecture or surmise."[28] Rule 56 provides a tool by which to isolate and dispose of factually unsupported claims.[29]

Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but

**25.** *Taneff v. Hoehn (In re Taneff)*, 190 B.R. 501, 505 (W.D.N.Y.1996).

**26.** *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**27.** *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**28.** *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991).

**29.** *Celotex Corp. v. Catrett*, 477 U.S. at 327, 106 S.Ct. 2548.

also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.[30]

■■■ This Court is mindful of the fact that the missing element of Plaintiff's claim involves intent or Defendant's state of mind. State of mind is difficult to prove. The Supreme Court has stated that "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." [31] Extending this reasoning to dischargeability litigation, this Court acknowledges that great circumspection is required where summary judgment is sought on an issue involving state of mind.

■■■ Although summary judgments should be granted with particular caution when state of mind is at issue, this "does not mean that a party against whom summary judgment is sought is entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." [32] Promises that evidence will be forthcoming at trial are insufficient. The possibility that the fact finder might disbelieve the defendant's assertions of innocence is also not enough to forestall the entry of summary judgment.[33]

■■■ In connection with a Section 523(a)(6) claim, the creditor must prove by a preponderance of evidence that the injury in question resulted from an act that was both willful and malicious. "The concept of willfulness requires not merely an intent to commit the wrongful act but an actual intent to inflict the resulting injury upon the affected creditor." [34] "Willful" modifies "injury." [35] Although "willfulness" under this statute is a subjective element, which is difficult to prove, the absence of sufficient evidence to establish a *prima facie* case, is proper grounds for the entry of summary judgment.[36]

Applying these standards to the instant motion, Defendant has denied that he had any knowledge of the embezzlement, let

---

**30.** *Id.*

**31.** *Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Although the Supreme Court has not expressly overruled this holding, the courts, including the Supreme Court, "now more freely approve the granting of summary judgment in antitrust cases." *Texaco Puerto Rico, Inc. v. Medina,* 834 F.2d 242, 247 (1st Cir. 1987) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Monsanto Co. v. Spray–Rite Serv. Corp.,* 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984); *Ambook Enter. v. Time Inc.,* 612 F.2d 604, 622–23 (2d Cir.1979), *cert. dismissed,* 448 U.S. 914, 101 S.Ct. 35, 65 L.Ed.2d 1179 (1980)). *See also* James J. Duane, *The Four Greatest Myths About Summary Judgment,* 52 Wash. & Lee L. Rev. 1523 (1995).

**32.** *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975).

**33.** *Poller v. Columbia Broad. Sys., Inc.,* 368 U.S. at 480, 82 S.Ct. 486 (Harlan, J., dissenting).

**34.** *Deere & Co. v. Contella (In re Contella),* 166 B.R. 26, 28 (Bankr.W.D.N.Y.1994).

**35.** *Farmers Ins. Group v. Compos (In re Compos),* 768 F.2d 1155, 1158 (10th Cir.1985).

**36.** *Taneff v. Hoehn (In re Taneff),* 190 B.R. 501 (W.D.N.Y.1996) (on appeal, court reversed denial of summary judgment on this basis); *Guthrie v. Kokenge (In re Kokenge),* 279 B.R. 541 (Bankr.E.D.Tenn.2002).

alone any intent to injure Nichols. He has offered, by way of explanation, that he had given Lynch complete and unquestioned control over his financial affairs. At trial, the Court could observe his demeanor and possibly conclude that he was not credible. However, the possibility that he would not be believed is an insufficient basis for denying a summary judgment motion. To survive the motion, Plaintiff had to demonstrate enough evidence to create a triable issue of fact as to Defendant's knowledge and intent, whether by circumstantial evidence or otherwise. Plaintiff made no suggestion that she needed to conduct additional discovery, relying on Rule 56(f). In fact, the Supplemental Motion was made on the eve of trial. The Court appreciates that it may not have the whole story before it, but it must base its ruling on the evidence tendered by the parties. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' "[37]

## IV. MOTION TO AMEND

Since the proffered Amended Complaint cannot withstand Defendant's Supplemental Motion for Summary Judgment, the Court finds that there would be no purpose served in allowing Plaintiff to amend her Complaint on the eve of trial.

## V. CONCLUSION

Accordingly, it is hereby ORDERED that:

A. The Motion to Amend is DENIED on the basis of futility; and

B. The Motion for Summary Judgment is GRANTED in favor of Defendant

and against Plaintiff, denying the Complaint's objection to discharge of this particular debt under Section 523.

C. There is no just reason to delay the entry of final judgment as to Defendant Tilley. In accordance with Fed.R.Civ.P. 54(b), made applicable by Bankruptcy Rule 7054, the Court directs the Clerk of the Court to enter final judgment as to Defendant Tilley.

---

**37.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 1).