**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 10 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DIANN TRAFFAS,

        Plaintiff - Appellant,

    v.

CESSNA AIRCRAFT COMPANY, a
division of Textron Corporation;
LOCAL LODGE 774 OF THE
INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS (AFL-CIO),

        Defendants - Appellees.

No. 02-3218

(D. Kansas)

(D.C. No. 01-CV-1255-JTM)

**ORDER AND JUDGMENT** [*]

Before **HENRY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

        After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs

---

    [*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

without oral argument.  See Fed. R. App. P. 34(f);10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.

Diann Traffas appeals from an adverse summary judgment dismissing her action brought under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, against the Cessna Aircraft Company (Cessna) and Local Lodge 774 of the International Association of Machinists (the Union).  Ms. Traffas's suit, commonly referred to as a "hybrid" action, alleges that Cessna breached the collective bargaining agreement (CBA) between Cessna and the Union when it extended her probationary period of employment and then terminated her employment during the extended period.  Ms. Traffas contends that the Union breached its duty of fair representation by agreeing to the probationary period extension and by refusing to represent her upon the termination of her employment. [1]

On appeal, Ms. Traffas reasserts her arguments in the district court, contending, *inter alia* , that the district court erred in its interpretation and application of the CBA with respect to the commencement of an employee's probationary period, and whether the period can be extended.  She also argues

---

[1]The complaint, as refined in the pretrial order, additionally alleged a Title VII cause of action for retaliation.  42 U.S.C. § 2000e-3(a).  The district court also granted Cessna's motion for summary judgment on that claim.  On appeal, Ms. Traffas does not develop any challenge to that ruling.  Accordingly, we do not address the subject.

that the question as to whether the Union breached its duty of fair representation should be submitted to a jury.

Our review of the district court's summary judgment is *de novo*, applying the same standard as the district court. Nelson v. Holmes Freight Lines, Inc., 37 F.3d 591 (10th Cir. 1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52, 256 (1986). For the reasons set out below, we affirm.

## BACKGROUND

The district court fully set out the facts of this case in its Memorandum Order, filed May 22, 2002. We refer here only to those facts central to this appeal.

Ms. Traffas was employed by Cessna on May 15, 2000, beginning as a sheet metal trainee at Cessna's 21st Street Facility in Wichita, Kansas. On October 3, 2000, she was transferred to the Wichita Area Vocational-Technical School for further training. Upon completion of her training, on October 23, 2000, she began working at Cessna's Mid-Continent Facility where she was assigned to Department 134, the sand and fill area.

In late November and early December 2000, two or three incidents involving Ms. Traffas and allegations of inappropriate comments and conduct occurred, resulting in investigations by Cessna personnel. On December 13, 2000, Cessna's labor relations representative, Traffas's supervisors, and a union representative met with Traffas and informed her that her status as a probationary employee was going to be extended 60 days. On December 19, 2000, Ms. Traffas, a Cessna manager, and Ms. Traffas's Union steward signed a written agreement extending Ms. Traffas's probationary period for 60 days from the expiration of her original 75-day probation. The agreement states in part that the extension is "[i]n order to determine if probationary employee Diann Traffis [sic], badge #40773, can develop the skills necessary to become a bargaining unit employee . . . ." Aplt's App. (hereafter "App.") Vol. 3 at 0572 (emphasis added). Ms. Traffas wrote "under protest" beneath her signature.

Ms. Traffas was advised that if she did not agree to the further probationary period, she would be terminated immediately. The record supports the conclusion that Cessna would in fact have terminated her if she had not agreed to the extension, and would have done so with Union approval. It is undisputed that Cessna, with Union approval, had for years extended an employee's probation because of questionable attendance, performance or conduct issues; and, that this was the accepted alternative to discharge during the probationary period. Thus, as

the district court correctly concluded in its Memorandum Order, the extension of Ms. Traffas's probation "occurred consistent with the past practice of the employer and the Union." App. Vol. 2 at 0871.

On February 13, 2001, Ms. Traffas made an inappropriate comment about, and within hearing of, a co-worker. Upon receiving a report of the incident, Cessna investigated, and then terminated Ms. Traffas's employment on February 14, 2001. She then approached the Union to file a grievance. However, the Union declined to represent her because she was still in probationary status.

## DISCUSSION

In her complaint Ms. Traffas denominates this suit as a "hybrid" action (where the alleged wrongful conduct of the employer and that of the Union are intertwined), under § 301 of the LMRA. App. Vol. 1 at 0001. In a hybrid action the plaintiff must prove both that the employer violated the collective bargaining agreement with the Union and that the Union breached its duty of fair representation. See Young v. UAW-LETC, 95 F.3d 992, 996 (10th Cir. 1996); Jarvis v. Nobel/Sysco Food Servs. Co., 985 F.2d 1419, 1422 (10th Cir. 1993). That requirement is incorporated in the pretrial order in this case. App. Vol. 1 at 0027-0028.

## A.

Ms. Traffas does not dispute that if she was still in a probationary status when she was terminated on February 14, 2001, then neither of the requirements of a hybrid suit are satisfied. That is, the termination would not have violated the CBA, and she would have no claim concerning the Union's duty of fair representation. Thus, a major issue on appeal is whether or not Ms. Traffas was still a probationary employee at the time she was terminated. She focuses her argument on the extension, contending first that her probationary period had already expired by December 19, 2000, and, the CBA does not provide for the revival or creation of a new probationary period after the protections of the CBA have attached. Second, she argues that even if she was still in a probationary status on December 19, 2000, the CBA does not allow extensions of that status.

## 1.

The first question, then, is when did Ms. Traffas's probationary period start? In support of her arguments that her probation had already been served, and had expired by the time she began work at the Mid-Continent Facility on October 23, 2000 (and, therefore, was not on probation in December when the "extension" was signed), Ms. Traffas relies primarily on Article VI of the CBA which provides in relevant part as follows:

**ARTICLE VI**
**Dismissal and Grievance Procedure**
Section A – Dismissal Procedure

42.     Any person who has been an employee of the Company seventy-five (75) calendar days or less is considered a probationary employee and may be discharged or laid off without cause at the discretion of the Company, and such proceedings shall be the sole right of the Company.

. . .

44.     All employees who have been in the continuous employment of the Company for a period of more than seventy-five (75) calendar days may be discharged by the Company for cause such as the following: Insubordination, intoxication, or being under the influence of intoxicating liquor or drugs while on duty, gross inefficiency, breach of trust, including commission or concealment of errors, sabotage, and excessive absences.

App. Vol. 1 at 0094.

Referring to the term "employee" in Article VI, she reasons that the 75-day probationary period commenced when she was first hired as a trainee on May 15, 2000, because the term "employee" as defined by the Fair Labor Standards Act includes trainees, and, for that matter, virtually anyone receiving compensation from, and rendering a benefit to, the employer.

She contends, in the alternative, that in July or August 2000, while she was at the 21st Street Training Facility, her probation, or any future probation, ended because she worked at some "covered" jobs on the subassembly side of the

facility. She asserts that as soon as she began doing that particular work, she became a full-fledged member of the bargaining unit. Appellant's Br. at 12-15.

Cessna and the Union respond that the record shows Ms. Traffas to have been a trainee until she was transferred from the Vo-Ed school to the Mid-Continent Facility on October 23, 2000, at which time her 75-day probationary period started. They contend that the word "employee" as used in the CBA refers to employees in the bargaining unit rather than anyone who is employed by Cessna, including trainees; so the FLSA definition of "employee" is irrelevant. Thus, they conclude, Ms. Traffas was still in her probationary period on December 19, 2000, when her probation was extended.

The record fully supports the latter position. Ms. Traffas stipulated in the pretrial order as follows:

4.    STIPULATIONS.

a.    The following facts are uncontroverted:

. . . .

(2)    During plaintiff's training period at the 21st Street Facility, she was not covered by the collective bargaining agreement.

. . . .

(11)    Plaintiff's 75 day probationary period started on October 23, 2000.

App. Vol. 1 at 0022. [2]

Those stipulations are consistent with Ms. Traffas's own deposition testimony in which she acknowledged that it was her understanding that her 75-day probationary status commenced on October 23, 2000, when she reported for work at the Mid-Continent Facility, and, that she was still in that probationary status on December 19, 2000. Id. at 0061-64, 0067.

Additionally, in Article I, ¶¶ 3 and 8, the CBA itself defines employees in the bargaining unit, and covered locations—which do not include the 21st Street Training Facility. Id. at 0088. And, ¶ 127 of the CBA provides:

> 127. Any employee transferring out of the bargaining unit after January 1, 1988, will cease to accumulate bargaining unit seniority while in positions outside of the bargaining unit. If such employee returns to the bargaining unit, they shall only be allowed to utilize the seniority they have accumulated in the bargaining unit. It is understood between the parties than any company employee who has never been in the bargaining unit shall not be allowed to be placed in a bargaining unit position except as a new hire as far as seniority is concerned.

Id. at 0107 (emphasis added). [3]

---

[2]After the defendants filed their motions for summary judgment, counsel for Traffas filed a motion seeking to be relieved of paragraph 4.a.(11) of the pretrial order on the ground of inadvertence. App. Vol. 1 at 0296. The motion concluded by stating that "[t]o allow the stipulation to remain in the pretrial order would be fatal to plaintiff's case . . . ." Id. at 0299. The district court denied the motion. App. Vol. 2 at 0865. That ruling is not challenged on appeal. Thus, we take the stipulated facts as they stand in the record.

[3]Ms. Traffas contends that paragraph 127 supports her position because it

(continued...)

Furthermore, Ms. Traffas did not make bargaining agreement wages until October 23, 2000. CBA ¶¶ 77-79, id. at 0100-101, App. Vol. 3 at 0197. And, her job classification did not change until that date. App. Vol. 3 at 0197. It is evident from her job classification record, and from her own deposition testimony that although Ms. Traffas did some work at the subassembly side of the 21st Street Facility during, perhaps, July or August 2000 (she was unsure of the dates in her deposition), that was part of her training, not an entry into a bargaining unit. Id.; App. Vol. 2 at 0486-0496. [4]

In sum, we conclude that Ms. Traffas's 75-day probation period commenced on October 23, 2000, when she began work at Cessna's Mid-Continent Facility, and that she was still on probation on December 19, 2000,

---

[3](...continued)
fails to mention probation along with seniority when referring to employees who are first placed in a bargaining unit as "new hires." App. Vol. 2 at 0366. We are unpersuaded. The defendants' commonsense inference from this provision is the more logical interpretation.

[4]Ms. Traffas also contends that a February 15, 1990, letter from Cessna to the Union—before the 21st Street Facility was built and more than six years prior to the CBA at issue—proves that some bargaining unit members would be stationed at the facility, and some covered work would be done there. Traffas reasons that, therefore, when she did some of that work she became a member of the bargaining unit and her probationary period ended. We disagree. Two letters from the Union at that time, February 9, 1990, and February 15, 1990, if anything, prove that trainees will continue to be just that—trainees—while learning to do some subassembly jobs. App. Vol. 3 at 0667-0671. And, again, reference to Ms. Traffas's job classification record, id. at 0197, and her deposition, App. Vol. 2 at 0486-0496, show that she continued in a training status.

when the agreement to extend her probation was signed. That conclusion distinguishes this case from the one upon which Ms. Traffas places her principal reliance, Bennett v. Local Union No. 66, Glass, Molders, Pottery, Plastics or Allied Workers Int'l Union, 958 F.2d 1429 (7th Cir. 1992). In Bennett, the employer essentially attempted to create a new probationary period after the initial period had expired and the full protections of the CBA had attached. The Seventh Circuit held that probation could not be retroactively revived. That is not the issue here.

**2.**

Ms. Traffas contends in the alternative that even if her 75-day probationary period began on October 23, 2000—and, therefore, was still in effect on December 19, when her probation was extended—the CBA contains no provision for extending an existing probationary period. Rather, she argues, Article VI stands unambiguously for the proposition that the period cannot be extended. Thus, she asserts, the extension constituted a breach of the plain terms of the CBA, and she was not in a probationary status when she was terminated on February 14, 2001. Proceeding on the premise that the CBA does not permit extensions of probation, she cites a number of cases standing for the general propositions that employers and unions: (a) cannot ignore the unambiguous terms

of the CBA; (b) changes in or modifications to the CBA must be made through the collective bargaining process; (c) individual side agreements contrary to the CBA are prohibited; and (d) that it is improper to rely on extrinsic evidence of intent such as "past practice" or the "common law of the shop" when the CBA is unambiguous and a gap does not need to be filled. In particular, she claims that the district court erred by referring to the not-uncommon practice by Cessna, approved by the Union, of extending periods of probation.

The authorities cited by Ms. Traffas for these general propositions are all distinguishable from this case. They become generally relevant only when one accepts her premise that the CBA at issue here clearly and unambiguously prohibits extensions for existing probationary periods.

Cessna and the Union insist, and the district court at least impliedly found, that because the CBA is completely silent as to extensions of probation, it is ambiguous on the point, or there is a gap in the CBA, which permits the court to take past practice into consideration. Further, Cessna and the Union argue, and the district court expressly concluded, that the extension here was consistent with the CBA. See Memorandum Order at 5-6, App. Vol. 2 at 0870-0871.

Article VI of the CBA, set out in part, above, could support an argument either way. That is, if an extension is not expressly permitted, it is prohibited. Or, the provision's silence on the subject creates a gap in the agreement, or at

least renders it ambiguous, allowing for reference to past practice and the obvious intent of the parties to give probationary employees a further chance instead of terminating them.

We are inclined to the latter view, which was the substance of the district court's opinion on the subject. However, it is not necessary to rest our disposition on the point because, as discussed below, we conclude that the Union did not breach its duty of fair representation, and summary judgment on that point was not improper.

**B.**

The Supreme Court has made it clear that the Union breaches its statutory duty of fair representation only when its conduct toward a covered employee is arbitrary, discriminatory, or in bad faith, and so far outside the wide range of reasonableness as to be irrational. See Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 67, 81 (1991); Vaca v. Sipes, 386 U.S. 171, 190 (1967); James v. Int'l Bhd. of Locomotive Eng'rs, 302 F.3d 1139, 1145 (10th Cir. 2002).

In Nelson v. Holmes Freight Lines, Inc., 37 F.3d 591 (10th Cir. 1994), we expressly recognized these standards, stating:

> A breach of the duty of fair representation occurs when the union's conduct toward the employee is "arbitrary, discriminatory or in bad faith." (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)). In *Arguinaga v. United Food & Commercial Workers Int'l Union*, 993

-13-

F.2d 1463 (10th Cir. 1993), we noted the limited scope of arbitrariness and discrimination as applied to actions by the union:

> A union's action are arbitrary only if, 'in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a "wide range of reasonableness" as to be irrational.' . . . A union's discriminatory conduct violates its duty of fair representation if it is 'invidious.'

Id. at 1479 (quoting *Air Line Pilots Ass'n. Int'l. v. O'Neill*, 499 U.S. 65, 67 & 81, 111 S. Ct. 1127, 1128 & 1137, 113 L. Ed. 2d 51 (1991). Acts by the union which are merely negligent do not state a claim for breach of a duty of fair representation. *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372-73 (1990).

Id. at 594 (emphasis added).

There is no question, in light of our conclusion that Ms. Traffas's 75-day probationary period began on October 23, 2000, that Cessna could have terminated her in December 2000, as an at-will employee. The Union representatives established (and it is not disputed by Traffas) that the Union's actions in agreeing to a 60-day extension of the probationary period were solely in her best interests. That motivation related to the subject of extensions generally. As Mr. Larkin, a business representative of International Association of Machinists, testified:

> I look at it from the perspective of the union trying to keep a person employed. I – I mean, if I'm in that position, and I have a chance for somebody to get another chance with the company and keep her from getting terminated, that's what I'm going to do. I – you're looking out for that person's well-being, . . .

App. Vol. 2 at 0450.

On this record, the Union's action in agreeing to an extension of Ms. Traffas's probation, and then declining to represent her when she was terminated in February 2001 because she was still on probation as the Union had agreed, can in no sense be so far outside the range of reasonableness as to be irrational or in bad faith. Furthermore, a jury trial on such a question is not an absolute requirement, as our opinion in Young (affirming a grant of summary judgment on a § 301 hybrid claim) illustrates and when the provisions of Fed. R. Civ. P. 56(c) have been satisfied.

## CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

-15-