PUBLISH

UNITED STATES COURT OF APPEALS
**Filed 9/10/96**TENTH CIRCUIT

---

LARRY YOUNG,

     Plaintiff-Appellant,

v.

UNITED AUTOMOBILE WORKERS -
LABOR EMPLOYMENT AND
TRAINING CORP.,

     Defendant-Appellee.

No. 95-4069

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 93-CV-942)

---

HAROLD DUNNE, Esq., Livonia, Michigan, for Plaintiff-Appellant.

WILLIAM T. PAYNE (Margo A. Feinberg with him on the briefs), Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, California, for Defendant-Appellee.

---

Before BRORBY, EBEL, and HENRY, Circuit Judges.

---

HENRY, Circuit Judge.

---

     Defendant-appellee United Auto Workers - Labor Employment and Training

Corporation ("UAW-LETC") is a nonprofit, federally funded, corporation that provides

automotive training to disadvantaged young men and women. On November 22, 1991, plaintiff-appellant Larry Young was terminated from his position as a job developer at UAW-LETC's Clearfield, Utah facility. Mr. Young contested his discharge through the procedure provided in the collective bargaining agreement between his union, the UAW-LETC Staff Council ("Union"), and UAW-LETC. On March 25, 1993, an arbitrator upheld Mr. Young's discharge on two grounds: poor work performance and dishonesty. Subsequently, Mr. Young brought an action under section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §185(a), claiming that his termination was unlawful because the Union had failed to provide him with fair representation during his termination procedure. The United States District Court for the District of Utah granted UAW-LETC's motion for summary judgment against Mr. Young's claim. We exercise jurisdiction pursuant to 28 U.S.C. §1291 and affirm.

## I. BACKGROUND

We construe the facts favorably to Mr. Young, as our standard of review on summary judgment requires. The significant facts are these: On October 31, 1991, Mr. Young engaged in a private conversation with Jim Mumey, the Department of Labor Project Manager for the Clearfield facility of UAW-LETC. In this conversation, Mr. Young told Mr. Mumey that a UAW-LETC employee was "pilfering" materials from the program and selling them for profit. Mr. Young alleged that a local newspaper was

running advertisements placed by the suspected UAW-LETC employee for the sale of the pilfered materials. Believing that his conversation with Mr. Mumey was confidential and legally protected under the Job Training Partnership Act's whistle-blower protection provisions, see 29 U.S.C. § 1579(a); 20 C.F.R. § 636.2, Mr. Young denied ever having the conversation when asked by the management of UAW-LETC.

After being terminated, Mr. Young called Earnest Johnston, the Union's head representative, and asked him to file a grievance with UAW-LETC protesting his discharge. Although Mr. Young's local Union representative was Andy Carter, Mr. Young selected Mr. Johnston to handle his grievance. Mr. Young also requested that Gene Leonard, a union representative not affiliated with Mr. Young's Union, be allowed to assist Mr. Johnston, and the Union agreed.

In his affidavit, Mr. Johnston states that prior to Mr. Young's hearing before UAW-LETC's personnel committee, he contacted Rene Jorgensen, an independent auditor, who was conducting an audit of UAW-LETC programs for the Department of Labor Office of the Inspector General. Mr. Jorgensen told Mr. Johnston that no Department of Labor official would talk to him about the then ongoing audit of UAW-LETC. Mr. Johnston also called Mr. Mumey and Peter Rell, National Director of the Job Corps, but they never returned his calls. Mr. Young has offered nothing in the way of depositions, answers to interrogatories, admissions or affidavits to suggest that Mr. Johnston did not place these calls. The Department of Labor did not make public the

3

results of their investigation of UAW-LETC until March 1, 1993.

UAW-LETC's personnel committee upheld Mr. Young's termination, and Mr. Johnston pressed the Union for arbitration. The Union agreed to arbitration, and Mr. Johnston participated in the selection of an arbitrator. Mr. Young gave Mr. Johnston and Mr. Leonard various materials to help them prepare for the arbitration hearing. These materials included a deposition given by Mr. Young in which he states: "If a member of the UAW-LETC staff informed Jim Mamey [sic] that a UAW-LETC employee was pilfering parts and/or tools from the program and selling them for profit, that member of the UAW-LETC staff was not me." Aplt's App. vol. II at 544. Mr. Johnston also attained Mr. Young's personnel file from the UAW-LETC. Mr. Johnston and Mr. Leonard discussed these materials and conferred frequently with Mr. Young in preparation for the arbitration hearing.

The evening prior to the arbitration hearing, Mr. Johnston, Mr. Leonard, and Mr. Young met and discussed their strategy. Mr. Johnston brought Merle Hill, a former cite director for UAW-LETC's Clearfield facility familiar with job performance requirements, to testify on Mr. Young's behalf. Union representative Andy Carter, UAW-LETC employee Charlie Tijerina, Mr. Tijerina's wife, and Mr. Young's wife were also present. Mr. Hill was chosen to testify.

At the arbitration hearing, Mr. Leonard examined Mr. Hill, who testified to Mr. Young's good work performance. Other evidence was introduced to show Mr. Young's

4

good work performance, and objections were made to the introduction of certain evidence by UAW-LETC. Consistent with Mr. Young's belief that his statements to Mr. Mumey were confidential, Mr. Young planned to deny making the statements. However, the UAW-LETC's representative called Mr. Mumey, who testified via telephone that Mr. Young had in fact accused an employee at UAW-LETC of pilfering $80,000 of materials. Confronted with this testimony, Mr. Young conferred with his representatives and telephoned attorney Harold Dunne, Mr. Young's counsel for the present litigation. Following this consultation, Mr. Young decided to admit that he made the statements.

Mr. Johnston and Mr. Leonard prepared a thorough post-hearing brief for the arbitrator. They defended Mr. Young's good work performance. As for the statements to Mr. Mumey, they argued that Mr. Young believed that federal whistle-blower protections insured the confidentiality of his statements. Even if his statements were not protected, they contended, his actions were meant to protect UAW-LETC from the wrongful acts of certain employees and therefore could not be construed as dishonest. They further argued that UAW-LETC's failure to investigate Mr. Young's statements suggests that UAW-LETC's management knew the statements were true and was trying to cover up the wrongdoing in order to protect UAW-LETC's image and federal funding.

On March 25, 1993, an arbitrator denied Mr. Young's grievance, concluding that UAW-LETC had sufficient reason to discharge Mr. Young for two reasons: (1) poor performance and (2) dishonesty. The arbitrator stated that Mr. Young had been dishonest

5

when he told UAW-LETC management that he had not contacted Mr. Mumey and when he told Mr. Mumey that employees were pilfering from UAW-LETC.

On October 20, 1993, Mr. Young filed his original complaint against UAW-LETC and its president, Bruce Lee. UAW-LETC filed a motion for summary judgment or, in the alternative, for dismissal. In response to this motion, Mr. Young filed an amended complaint on February 15, 1994, dropping Bruce Lee as a defendant and restating the claim under section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a). Mr. Young alleged that he had been discharged in violation of the collective bargaining agreement between UAW-LETC and the Union because he was not fairly represented by the Union prior to and during the arbitration hearing. On March 22, 1994, the district court denied UAW-LETC's first motion for summary judgment as moot because it was directed toward Mr. Young's withdrawn, original complaint. UAW-LETC subsequently moved again for summary judgment, contending that there was no material dispute as to whether the Union breached its duty of fair representation. The district court granted UAW-LETC's motion for summary judgement, stating:

> This case falls woefully short of providing genuine issues of material fact that are in dispute that go to the point of was there a failure to provide fair representation, especially applying the standard as I must of arbitrary and bad faith or capricious conduct on the part of Mr. Johnston. . . .
> . . . .
> It is so far from a legitimate lawsuit in federal court to allege a breach of the duty to provide fair representation that to me it borders on sanctionable. . . .
> . . . .
> . . . [The issue is] whether you have enough facts to show that [Mr. Johnston's] representation was so deficient as in the words of [Air Line

Pilots Ass'n v. O'Neill, 499 U.S. 65, 67 (1991)], that it was so far outside of a wide ranged reasonableness as to be irrational. And when I look at the affidavits of Mr. Johnston and Mr. Leonard and all of the other evidence that was submitted in this case, I would be remiss if I said . . . some reasonable fact finder could find that this violated the duty to provide fair representation.

Aplt's App. vol. II at 593-95. Mr. Young now appeals the district court's order granting UAW-LETC's motion for summary judgment.

## II. DISCUSSION

### A. Standard of Review

This court reviews the district court's order granting summary judgment de novo and must apply the same standards applied by the district court. Summary judgment is granted if there is no genuine issue of material fact for trial. Considine v. Newspaper Agency Corp., 43 F.3d 1349, 1356 (10th Cir. 1994). A party who moves for summary judgment under Rule 56 "is not required to provide evidence negating an opponent's claim. Rather, the burden is on the nonmovant, who 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Committee for the First Amendment v. Campbell, 962 F.2d 1517, 1521 (10th Cir. 1992) (citation omitted) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)).

### B. The Duty of Fair Representation and Its "Wide Range of Reasonableness"

Mr. Young's claim is a "hybrid" federal labor claim. In order to prevail Mr.

7

Young must prove (1) that the Union breached its duty of fair representation and (2) that UAW-LETC discharged Mr. Young in violation of its collective bargaining agreement with the Union.  See Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry, 494 U.S. 558, 564 (1990); Mock v. T.G.&Y. Stores Co., 971 F.2d 522, 530-31 (10th Cir. 1992). The sole issue raised by UAW-LETC's motion for summary judgment is whether the Union breached its duty of fair representation under federal labor law.  As both parties correctly state, "[a] union breaches its duty of fair representation if its conduct toward a member is 'arbitrary, discriminatory, or in bad faith.'" Aguinaga v. United Food & Commercial Workers Int'l Union, 993 F.2d 1463, 1470 (10th Cir. 1993) (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)), cert. denied, 114 S. Ct. 880 (1994).  Mr. Young argues that the Union's conduct was arbitrary.[1]  "[A] union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion . . . ." Vaca, 386 U.S. at 191. The Supreme Court recently stated that "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." Air Line Pilots

---

[1]     Mr. Young has not argued that the Union's conduct was discriminatory or in bad faith.  Although Mr. Young states in his brief that the Union's actions were "arbitrary, capricious, and in bad faith," Aplt's Br. at 29, at no other place has he developed a bad faith argument. Rather, he has focused on the lack of investigation and preparation by Mr. Johnston and Mr. Leonard.  Bad faith requires a showing of fraud or deceitful or dishonest action.  Mock, 971 F.2d at 531.  Mr. Young has not argued that the Union intentionally provided poor representation because of the statements to Mr. Mumey or for any other reason.  We will not make additional arguments for Mr. Young and will focus our attention on the argument he has presented -- that the Union's representation was arbitrary.

Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (citation omitted) (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)); see also Considine, 43 F.3d at 1357. "[T]his involves more than demonstrating mere errors in judgment. Petitioners are not entitled to relitigate their discharge merely because they offer newly discovered evidence that the charges against them were false and that in fact they were fired without cause. The grievance processes cannot be expected to be error-free." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 571 (1976). By insuring the effectiveness of collective action, this deferential standard is essential to the collective bargaining system, International Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 51 (1979), and in accordance with this deference, "mere negligence . . . [will] not state a claim for breach of the duty of fair representation," United Steelworkers v. Rawson, 495 U.S. 362, 372-73 (1990); see also Le'Mon v. NLRB, 952 F.2d 1203, 1205 (10th Cir. 1991), cert. denied, 506 U.S. 830 (1992).

In O'Neill, the Supreme Court held that the Air Line Pilot's Association owed its members the same duty of fair representation during contract negotiations as it did in all other union activity. 499 U.S. at 67. The Court described the duty of fair representation in the context of contract negotiation as follows:

> Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union. Rather, Congress envisioned the relationship between the courts and labor unions as similar to that between the courts and the legislature. Any substantive examination of a union's performance, therefore, must be highly deferential, recognizing the wide latitude that negotiators need for

9

the effective performance of their bargaining responsibilities. For that reason, the final product of the bargaining process may constitute evidence of a breach of duty only if it can be fairly characterized as so far outside a "wide range of reasonableness" that it is wholly "irrational" or "arbitrary."

Id. at 78 (citations omitted) (quoting Ford Motor Co., 345 U.S. at 338).

The Ninth Circuit has held that it will not attempt to second-guess a union's good faith, nondiscriminatory judgment "'in evaluating the merits of a grievance . . . or in presenting the grievance at an arbitration hearing.'" Stevens v. Moore Business Forms, Inc., 18 F.3d 1443, 1447-48 (9th Cir. 1994) (quoting Peterson v. Kennedy, 771 F.2d 1244, 1254 (9th Cir. 1985), cert. denied, 475 U.S. 1122 (1986)); see also Conkle v. Jeong, 73 F.3d 909, 916 (9th Cir. 1995), petition for det. filed, 64 U.S.L.W. 3780 (U.S. May 6, 1996). The NLRB also refuses to second-guess a union's assessment of the merits of a grievance "so long as it exercises its discretion in good faith and with honesty of purpose . . . . Mere negligence, poor judgment, or ineptitude in grievance handling are insufficient to establish a breach of the duty of fair representation.'" Service Employees Int'l Union, Local No. 579, 229 N.L.R.B. 692, 695 (1977)). We endorse the view taken by the Ninth Circuit and the NLRB, and we will not substitute for our own the Union's good faith, nondiscriminatory judgment in assessing and presenting its members' grievances. Of course, to enjoy this deference the Union must show that it did indeed exercise its judgment and did not act arbitrarily. See Stevens, 18 F.3d at 1447-48.

C. Application of the O'Neill Standard

10

If there is no genuine issue of material fact as to whether Mr. Young received fair representation, we must affirm the district court's order granting UAW-LETC's motion for summary judgment. To fulfill the Union's duty, the representation provided by Mr. Johnston and Mr. Leonard need only avoid being arbitrary, that is, "so far outside [the] 'wide range of reasonableness' [accorded union representatives] as to be irrational." O'Neill, 499 U.S. at 67. To breach this duty the union must "arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." Vaca, 386 U.S. at 191.

The Union did not disregard Mr. Young's grievance, nor did the Union process it in a perfunctory fashion. On the contrary, Mr. Johnston requested, and the Union accepted, arbitration. An employee does not have the absolute right to arbitrate every grievance. See Vaca 386 U.S. at 194-95. Mr. Young argues that it was irrational to bring Mr. Leonard into the case only two weeks prior to the arbitration. However, the decision to bring Mr. Leonard into the case at all was a concession to Mr. Young; the collective bargaining agreement between the Union and the UAW-LETC does not provide for outside representation.

In an attempt to minimize Mr. Leonard's contributions, Mr. Young argues that the ultimate responsibility to provide fair representation fell upon Mr. Johnston, the representative provided by the Union. We cannot overlook Mr. Leonard's contributions so easily. Mr. Johnston and Mr. Leonard discussed Mr. Young's case on several occasions, and both conferred frequently with Mr. Young. Mr. Leonard actively

11

participated in the arbitration hearing: making objections to evidence offered by UAW-LETC, examining Mr. Hill, and cross-examining a witness offered by UAW-LETC. Mr. Leonard contributed greatly to the fairness of Mr. Young's grievance procedure.

Turning to the first substantive basis for Mr. Young's discharge, Mr. Young cannot refute that he was fairly represented with regard to his work performance,[2] the principal battleground upon which both Mr. Young and Mr. Johnston determined to make their stand. Mr. Johnston brought in and prepared an outside witness, Mr. Hill, who testified to Mr. Young's good work performance under the direct examination of Mr. Leonard at the arbitration hearing. Mr. Johnston and Mr. Leonard objected to various materials that were introduced by UAW-LETC to prove Mr. Young's poor work performance, and Mr. Leonard cross-examined a UAW-LETC witness who testified to Mr. Young's poor work performance. These efforts by Mr. Johnston and Mr. Leonard were quite reasonable even if unsuccessful. It is true that Mr. Johnston and Mr. Leonard failed to offer evidence of how Mr. Young's sick leaves adversely affected his monthly

---

[2] With respect to work performance, the Codes of Conduct for Staff found in Article VIII of the collective bargaining agreement between UAW-LETC and the Union provides:

  A.  Infractions (Minor)
      Committing any of the following may subject employees to disciplinary action or discharge:
      1.  Careless or inefficient performance of duties, including failure to maintain acceptable standards of workmanship or productivity.

Aplt's App. vol. I at 161. Although poor work performance is a minor infraction, the language of the agreement makes clear that an employee may be discharged based on such conduct alone.

12

performance reports. However, the failure to present a particular argument is insufficient to create a genuine issue of material fact in light of the other efforts made by Mr. Johnston and Mr. Leonard. To conclude otherwise would allow the Union's good faith, nondiscriminatory judgment to be substituted by that of this court, which we are unwilling to do. See Stevens, 18 F.3d at 1447-48; Service Employees Int'l Union, Local No. 579, 229 N.L.R.B. at 695.

With respect to the second ground cited for Mr. Young's termination -- dishonesty[3] -- "the factual . . . landscape at the time of the union's actions" forecloses the conclusion that the Union's representation of Mr. Young was irrational. See O'Neill, 499 U.S. at 67. Up to the time of the arbitration hearing, Mr. Young had denied ever speaking with Mr. Mumey concerning the alleged pilfering at UAW-LETC when asked by UAW-LETC management. Assuming, as we must, that Mr. Young told Mr. Johnston and Mr. Young about the statements prior to the arbitration hearing, it was reasonable for them to focus on the issue they felt mattered most -- work performance. This plan accommodated Mr. Young's intention to continue to deny the statements during the arbitration hearing. Mr. Mumey's testimony at the arbitration hearing came as a surprise. Mr. Johnston and Mr. Leonard objected, but the arbitrator allowed Mr. Mumey to testify via telephone.

---

[3] "Making malicious, false or derogatory statements that may damage the integrity or reputation of UAW-LETC, its products, performance, or staff" is listed as a major infraction of the Codes of Conduct for Staff in Article VIII of the collective bargaining agreement between UAW-LETC and the Union. Aplt's App. vol. I at 162.

13

Confronted with his testimony, Mr. Johnston and Mr. Leonard fell back on the next line of defense, the post-hearing brief. In their brief, Mr. Johnston and Mr. Leonard argued that Mr. Young's statements to Mr. Mumey were confidential under the whistle-blower protections provided under the Job Training Partnership Act, see 29 U.S.C. § 1579(a); 20 C.F.R. § 636.2. Based on his belief that his statements were confidential, Mr. Young offered information to the government that was meant to benefit UAW-LETC by exposing a potentially grave problem. Mr. Johnston and Mr. Leonard argued that this conduct was not dishonest; if anything Mr. Young's willingness to speak to government officials proved him to be honest and forthright. These arguments are not so arbitrary as to be irrational.

That Mr. Johnston and Mr. Leonard did not track down all the newspaper ads placed by UAW-LETC employees and had not interviewed Mr. Mumey nor other UAW-LETC employees concerning the alleged wrongdoing prior to the arbitration hearing is insufficient to create a genuine issue of material fact. Mr. Johnston and Mr. Leonard believed that dishonesty would not be an issue during the discharge proceedings, and prepared accordingly. Mr. Young also believed the statements would not be an issue and planned to continue to deny them if asked. Likewise, the failure of Mr. Johnston and Mr. Leonard to attain an advance copy of the Department of Labor's audit of the UAW-LETC program fails to defeat the UAW-LETC's motion for summary judgment. Mr. Johnston called Mr. Jorgensen and was told that no Department of Labor official would comment

14

on the then ongoing investigation of UAW-LETC. Mr. Johnston and Mr. Leonard's approach may not have been wise in retrospect, but it was certainly within the wide range of reasonableness that we must afford them.

## III. CONCLUSION

In short, it is easily possible to dissect Mr. Johnston's and Mr. Leonard's performances, finding discrete actions that hindsight would suggest changing. But we must agree with the district court that under O'Neill's "irrational" standard, the appellant is "far from a legitimate lawsuit in federal court." See Aplt's App. vol. II at 593. Therefore, we AFFIRM the order of the district court.

15