FILED
United States Court of Appeals
Tenth Circuit

September 13, 2007

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

RANDALL R. HINKLEY,

   Plaintiff - Appellant,

  v.

ROADWAY EXPRESS, INC.; LOCAL
UNION #41 OF THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,

   Defendants - Appellees.

No. 06-3097
(D. Ct. No. 03-CV-2620-CM)
(D. Kan.)

ORDER AND JUDGMENT[*]

Before **TACHA**, Chief Circuit Judge, **SEYMOUR**, and **HOLMES**, Circuit Judges.

  Plaintiff-Appellant Randall Hinkley filed suit pursuant to section 301 of the Labor

Management Relations Act, 29 U.S.C. § 185, alleging that his employer terminated him

in violation of the collective bargaining agreement between his employer and his union

and that his union breached its duty of fair representation in handling his grievance. The

District Court concluded that Mr. Hinkley had not presented any evidence that the union

breached its duty and entered summary judgment in favor of Defendants-Appellants

Roadway Express, Inc. ("Roadway") and International Brotherhood of Teamsters Local

_____

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Union 41 ("Union"). Mr. Hinkley appeals the court's decision. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Mr. Hinkley worked as a city driver for Roadway, a nationwide trucking company. He was also a member of the Union, which served as his exclusive bargaining agent under a collective bargaining agreement ("CBA") between Roadway and the Union. Under the CBA, Mr. Hinkley may not be terminated "without just cause," although "no warning or notice need be given . . . before he is discharged if the cause of such discharge is proven dishonesty," which is in fact Roadway's reason for firing Mr. Hinkley. The CBA also establishes a grievance procedure for employment disputes, including the discharge of an employee.

In addition, under the CBA, Roadway may not use "computer tracking devices" for disciplinary purposes except in a few limited situations not at issue in the present case. Some Roadway trucks contain a Roadway Digital Dispatch system ("RDD"). The driver uses the RDD system to record delivery and pick-up information, and the dispatcher uses the RDD system to send messages to the driver. The RDD system also includes a tracking system called a global positioning system ("GPS"), which tracks the location of Roadway trucks by satellite. In handling Mr. Hinkley's grievance against Roadway, the Union argued that the CBA prohibits Roadway from using tracking data obtained from

the GPS for disciplinary purposes.[1]

On June 6, 2003, Mr. Hinkley worked from 4:00 p.m. to 12:30 a.m. He was scheduled to make deliveries to two Home Depot stores—one in Bannister, Missouri, and one in Lee's Summit, Missouri. Between these two deliveries, Mr. Hinkley stopped at the Home Depot store in Independence, Missouri.

The following Monday, June 9, Darryl Hoag, Roadway's driver manager, reviewed Mr. Hinkley's RDD entries and noticed significant time discrepancies and missing entries for his shift on June 6. He then reviewed Mr. Hinkley's loading guides, dispatch summary sheet, delivery receipts, and the GPS positioning report. Based on the GPS report, Mr. Hoag determined that Mr. Hinkley's RDD entries were incorrect. He then asked Mr. Hinkley to report to his office with a Union representative when he arrived at work that day.

Mr. Hinkley and a Union representative subsequently met with Mr. Hoag, who questioned Mr. Hinkley about his whereabouts the previous Friday, June 6. During this interview, Mr. Hinkley admitted he was at the Home Depot store in Independence where he had no authorized company business. When Mr. Hoag asked him why he visited the

---

[1]The District Court identified the GPS, rather than the entire RDD system, as the computer tracking device that the Union argued Roadway could not use for disciplinary purposes under the CBA. In his brief, however, Mr. Hinkley refers to both the RDD and the GPS in discussing the computer tracking device specified in the CBA. Based on our review of the record, we agree with the District Court. During the grievance hearings, Mr. Hinkley's Union representative referred to the GPS as the tracking device used by Roadway to initiate discipline. When we refer to tracking data, we are therefore referring to data obtained from the GPS, rather than the entire RDD system.

Independence store, Mr. Hinkley replied that he was "taking care of the customer," but would not give specific details. He also stated he was taking his lunch break at this time. Two days later, on June 11, Roadway terminated Mr. Hinkley for "proven dishonesty" related to his actions on June 6.

After Mr. Hinkley's discharge, the Union filed a grievance on his behalf, and on June 17, a joint labor-management committee called the Kansas City Local Cartage Committee ("Local Cartage Committee") held a grievance hearing. At the hearing, Mr. Hinkley's Union representative, Victor Terranella, raised a point of order regarding the CBA's provision prohibiting the use of computer tracking devices (i.e., the GPS) for disciplinary purposes. Mr. Terranella argued that because Mr. Hoag consulted computer tracking data after noticing time gaps in Mr. Hinkley's RDD entries, Roadway had used a computer tracking device for disciplinary purposes in violation of the CBA, and Mr. Hinkley should therefore be reinstated with full seniority and back pay. The Local Cartage Committee deadlocked on the point of order.

In accordance with the grievance procedure under the CBA, the Union then pursued Mr. Hinkley's grievance before the Missouri-Kansas Two-State Committee ("Mo-Kan Committee"). On July 8, the Mo-Kan Committee held a hearing, at which Mr. Terranella raised the same point of order regarding Roadway's use of the GPS data. The Mo-Kan Committee upheld the point of order and sent the grievance back to the Local Cartage Committee to be heard on the merits without the use of any computer tracking data. On July 22, the Local Cartage Committee held a hearing on the merits and upheld

Mr. Hinkley's discharge.

Mr. Hinkley subsequently filed a claim against both Roadway and the Union under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, alleging Roadway breached the CBA and the Union breached its duty of fair representation. The District Court granted both defendants' motions for summary judgment, concluding that Mr. Hinkley had failed to present any evidence that the Union breached its duty of fair representation—a necessary element of Mr. Hinkley's claim against both defendants. Mr. Hinkley appeals the court's order, arguing that summary judgment was improper because material issues of fact exist concerning the Union's representation.

## II.  DISCUSSION

We review the District Court's grant of summary judgment de novo, applying the same standards that the District Court applied. *Young v. United Auto. Workers-Labor Employment & Training Corp.*, 95 F.3d 992, 996 (10th Cir. 1996). Roadway and the Union are entitled to summary judgment if the evidence shows that "no genuine issue as to any material fact" exists. Fed. R. Civ. P. 56(c). In making this determination, "[w]e view the record and all inferences therefrom in the light most favorable to" Mr. Hinkley as the nonmoving party. *Nelson v. Holmes Freight Lines, Inc*., 37 F.3d 591, 594 (10th Cir. 1994).

A.    Standard Applicable to Duty of Fair Representation Claims

Mr. Hinkley's claim is a hybrid action under section 301 of the Labor Management Relations Act. To prevail against either Roadway or the Union, Mr. Hinkley must prove:

(1) his former employer, Roadway, violated the CBA, and (2) the Union breached its duty of fair representation. *Nelson*, 37 F.3d at 594 ("In a hybrid action, an employee's claims are directed against both the former employer and the union, and allege a violation of the collective bargaining agreement by the employer and a breach of the duty of fair representation by the union."). The sole issue before us on appeal is whether the Union breached its duty of fair representation in handling Mr. Hinkley's grievance against Roadway.

A union representing an employee in a grievance or arbitration procedure breaches its duty of fair representation by acting "in a discriminatory, dishonest, arbitrary, or perfunctory fashion." *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 864 n.6 (1987) (quotation omitted); *see also Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1239 (10th Cir. 1998) (noting that this Court has repeatedly described this standard "as prohibiting arbitrary, discriminatory, bad faith, or perfunctory conduct"). In the case before us, Mr. Hinkley argues that the Union's conduct was arbitrary and perfunctory and that it acted in bad faith.

The Union's representation of Mr. Hinkley is arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (citation and quotation omitted). For the Union to act in a "perfunctory" fashion, it would have to act "'without concern or solicitude, or [give] a claim only cursory attention.'" *Webb*, 155 F.3d at 1240 (quoting *Beavers v.*

*United Paperworkers Int'l Union, Local 1741*, 72 F.3d 97, 100 (8th Cir. 1995)). To

establish arbitrary or perfunctory action, Mr. Hinkley must demonstrate that the Union's

actions constitute more than "mere errors in judgment," *Hines v. Anchor Motor Freight,*

*Inc.*, 424 U.S. 554, 571 (1976), or "mere negligence," *United Steelworkers v. Rawson*,

495 U.S. 362, 372–73 (1990). To establish that the Union acted in bad faith, he must

present evidence of "fraud, deceitful action or dishonest action." *Mock v. T.G. & Y.*

*Stores Co.*, 971 F.2d 522, 531 (10th Cir. 1992).

Moreover, even if the Union breached its duty of fair representation, Mr. Hinkley

must show that the breach "seriously undermined" the grievance proceedings. *Webb*, 155

F.3d at 1242; *see also VanDerVeer v. UPS, Inc.*, 25 F.3d 403, 405 (6th Cir. 1994) ("[T]he

plaintiff must meet the onerous burden of proving that the grievance process was

*seriously flawed* by the union's breach of its duty to represent employees honestly and in

good faith and without invidious discrimination or arbitrary conduct." (quotation

omitted)). As we have previously noted, judicial review of a union's conduct is highly

deferential. *Young*, 95 F.3d at 997 (holding that this Court will not second-guess a

union's "good faith, nondiscriminatory judgment in assessing and presenting its

members' grievances").

B.      Evidence that the Union Breached Its Duty of Fair Representation

Mr. Hinkley argues that the Union breached its duty of fair representation because

his Union representative, Mr. Terranella, acted in an arbitrary and perfunctory fashion by

failing to object to one of the panel members hearing his grievance and failing to

introduce evidence of Roadway's improper use of information obtained from the computer tracking device. He also contends that certain remarks made by Mr. Terranella indicate that the Union acted in bad faith. Based on our review of the record, however, the Union did not act in bad faith or in an arbitrary or perfunctory manner in its handling of Mr. Hinkley's grievance. As we explain below, none of the conduct that Mr. Hinkley identifies suggests that the Union breached its duty of fair representation.[2]

First, Mr. Hinkley argues that Mr. Terranella acted arbitrarily in failing to object to one of the panel members who heard his grievance. On July 8, 2003, the day of Mr. Hinkley's hearing before the Mo-Kan Committee, Yellow Corporation ("Yellow") announced its intent to acquire Roadway. The labor relations manager for Yellow Transportation, John Graves, was a member of both the Local Cartage and the Mo-Kan Committees that heard Mr. Hinkley's grievance. Mr. Hinkley argues that Mr. Terranella should have objected to Mr. Graves's serving on these committees because, in light of the pending merger, a Yellow employee would not be an impartial arbitrator. In support of

---

[2]Mr. Hinkley argues that the District Court misapplied the standard applicable to summary judgment motions by improperly weighing evidence and not considering the record in the light most favorable to him as the nonmoving party. To support this argument, he cites employment discrimination cases, in which we note that, once a plaintiff presents evidence that an employer's stated reason is a pretext for discrimination, a jury should determine whether the employer actually had a discriminatory motive. *See, e.g.*, *Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995). We fail to see how these cases apply, as Mr. Hinkley has not alleged that the Union's conduct was discriminatory. To the extent he is arguing that a jury should decide whether the Union acted in bad faith, he must present some evidence of "fraud, deceitful action or dishonest action." *Mock*, 971 F.2d at 531. As we note below, he has failed to do so.

this requirement of impartiality, Mr. Hinkley notes that the CBA's procedural rules do not allow representatives of employers who are parties to the grievance to serve on the committees hearing the grievance.

The grievance procedures under the CBA do not, however, ensure the complete impartiality of grievance committees. Instead, the CBA directs that employers and unions appoint an equal number of committee members. Potential bias is therefore an inherent part of the selection process; some members represent employers and some represent unions. *See United Steelworkers of Am. Local 1913 v. Union R.R. Co.*, 648 F.2d 905, 913 (3d Cir. 1981) (characterizing a public law board consisting of a carrier representative and a union representative as "bipartisan rather than impartial and disinterested"). Indeed, even though the CBA's procedural rules also prohibit representatives of the local union from serving on grievance committees, members of Mr. Hinkley's union, Local 41, sit on grievance panels because Local 41 is the only local in the area. Moreover, the Union had not notified Mr. Terranella of any change in policy regarding the inclusion of Yellow employees on panels hearing grievances involving Roadway, and although Yellow had announced its intention to acquire Roadway, the acquisition was not complete until after Mr. Hinkley's grievance was resolved. Given the nature of joint labor-management committees and the fact that Mr. Graves was merely a representative of an entity intending to acquire Roadway, Mr. Terranella's decision not to object to Mr. Graves as a panel member is not arbitrary or perfunctory. It does not fall outside the "wide range of reasonableness" accorded union representatives, *see O'Neill*, 499 U.S. at 67, or indicate a

lack of concern for Mr. Hinkley's grievance, *see Webb*, 155 F.3d at 1240.

Second, Mr. Hinkley contends that Mr. Terranella should have introduced the first page of an inter-office memorandum during the final grievance hearing. In that memorandum, Mr. Hoag explained that his interview with Mr. Hinkley occurred after Mr. Hoag noted discrepancies in Mr. Hinkley's RDD entries and consulted GPS tracking data for the day in question. According to Mr. Hinkley, this part of the memorandum shows that his discharge was based on his employer's use of a computer tracking device in violation of the CBA. Mr. Terranella had made this very argument in the first hearing before the Local Cartage Committee and then again before the Mo-Kan Committee, urging both committees to order that Mr. Hinkley be reinstated because his discharge was based on Roadway's improper use of computer tracking data. The Mo-Kan Committee agreed that the tracking data should be excluded from the grievance proceedings, but directed that the case nevertheless be heard on "its merits on discussion with employee." Mr. Terranella understood the Mo-Kan Committee's decision as a directive that the Local Cartage Committee hear the case based on what transpired in Mr. Hinkley's meeting with Mr. Hoag. Relying on his understanding of the Mo-Kan Committee's decision, Mr. Terranella did not argue again that Roadway terminated Mr. Hinkley based on improper use of computer tracking data. In other words, he made a rational decision not to reargue an issue he thought had already been decided. Hence, his decision not to introduce the

first page of the memorandum is not arbitrary.[3]

In a related argument, Mr. Hinkley claims that Mr. Terranella acted arbitrarily in not objecting to Roadway's introduction of evidence based on his meeting with Mr. Hoag because the meeting would not have occurred if Mr. Hoag had not reviewed the computer tracking data and used it for disciplinary purposes in violation of the CBA. His theory is based on an evidentiary rule applied in criminal cases: that is, because the CBA prohibits use of a computer tracking device for disciplinary purposes, the statements Mr. Hoag obtained during his interview with Mr. Hinkley were the "fruit of the poisonous tree" and, as such, could not be used for disciplinary purposes. But this doctrine—intended to deter unlawful governmental action—does not apply in this context. *See Jenkins v. City of New York*, 478 F.3d 76, 91 n.16 (2d Cir. 2007) ("[T]he doctrine is an evidentiary rule that operates in the context of criminal procedure and has generally been held to apply only in criminal trials." (quotation omitted)). Furthermore, the fact that Mr. Terranella did not present a particular argument does not establish a breach of duty under section 301 when, as in the instant case, the union representative presented other arguments in support of the employee. *Young*, 95 F.3d at 998 ("[T]he failure to present a particular argument is insufficient to create a genuine issue of material fact in light of the other efforts made by [the union representatives].");  *see also Mock*, 971 F.2d at 531 ("Simply showing that the

---

[3]Mr. Hinkley also claims that Mr. Terranella withheld the first page of this memorandum from him until his grievance proceedings were finished. He argues that Mr. Terranella intentionally (i.e., in bad faith) withheld this information to conceal his poor representation, but he offers no evidence that would support his allegations of improper motive. Consequently, we find this argument meritless.

Union did not represent [the former employees] as vigorously as it could have does not establish a section 301 violation.").

Finally, Mr. Hinkley claims that the Union acted in bad faith by discussing his grievance in advance of the grievance hearings. He claims that Mr. Terranella indicated that the Union members of the grievance committees were "on the same page" and that the Union routinely works out deals in advance of grievance hearings. Mr. Hinkley supports his allegation of bad faith by drawing our attention to a brief exchange he had with Mr. Terranella. When asked by Mr. Hinkley whether the Union members of the grievance committee were all "on the same page," Mr. Terranella replied affirmatively, remarking that "we discuss these things." Even if this were true, the record contains no evidence that the Union intentionally provided Mr. Hinkley with poor representation, *see Young*, 95 F.3d at 997 n.1, or engaged in fraudulent, deceitful, or dishonest behavior in its representation of Mr. Hinkley, *id*. In other words, even if Union members discussed the case, nothing in the record suggests that Mr. Terranella or other Union members were acting in bad faith in connection with Mr. Hinkley's grievance.

### III. CONCLUSION

Because no genuine issue of material fact exists as to whether the Union breached its duty of fair representation, we AFFIRM the District Court's grant of summary

judgment in favor of the Union and Roadway.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge