**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 7, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DAVID MENGES,

      Plaintiff-Appellant,

v.

ABF FREIGHT SYSTEM, INC.,

      Defendant-Appellee.

No. 09-1384
(D.C. No. 1:08-CV-00305-CMA-MEH)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **PORFILIO**, and **MURPHY,** Circuit Judges.

---

Plaintiff David Menges sued his former employer, ABF Freight System,

Inc. (ABF), under section 301 of the Labor Management Relations Act (LMRA),

claiming he was terminated in violation of the collective bargaining agreement

(CBA) between ABF and his union, and that the union then breached its duty of

fair representation in handling his grievance. The district court awarded summary

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

judgment to ABF, concluding the union's handling of the grievance was sufficient as a matter of law. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Menges worked for ABF as a truck driver in its Denver, Colorado terminal. As a member of the Local Union 17 International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter "union"), the terms of his employment were governed by the CBA between the union and ABF. Article 46 of the CBA allowed ABF to discharge a union member without warning for "[r]ecklessness resulting in a serious accident while on duty." App. at 149. In August 2007, ABF discharged Menges under Article 46 based on an accident that he was involved in on July 31. ABF's stated reason for firing him was because he "attempted to make a right hand turn at a red light and struck a vehicle that had the right of way," and that "as a result of [his] negligence [he] [was] cited for Failure to Yield." *Id.* at 168. The union, through its business agent Michael Ramos, filed a grievance challenging the discharge and represented Menges at a hearing before a grievance committee equally comprised of union and employer members. The committee voted to uphold the discharge.

Menges then filed this action against ABF under the LMRA asserting a hybrid § 301/duty of fair representation claim.[1] To prevail on such a claim, the

---

[1] "The plaintiff in a hybrid § 301/ [duty of fair representation] action need not sue both his union and former employer in the same case, and he may choose
(continued...)

-2-

discharged worker must prove the following three elements: "(1) Some conduct by the worker's union that breached the duty of fair representation; (2) A causal connection showing that the union's breach affected the integrity of the arbitration process, and; (3) A violation of the collective bargaining agreement by the company." *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1239 (10th Cir. 1998). At summary judgment, the district court found Menges had raised a material fact issue as to the third element, that is, whether ABF terminated him in violation of Article 46. But it nonetheless granted summary judgment to ABF, concluding Menges could not satisfy the first two elements of his claim. The court found that even accepting Menges's version of the facts, the union's handling of his grievance was, at worst, negligent. And it explained that negligence as a matter of law does not constitute a breach of the duty of fair representation. Menges challenges this ruling on appeal, arguing he offered overwhelming evidence that Ramos's handling of the grievance was legally insufficient and was responsible for the committee's unfavorable decision.

---

[1](...continued)
to seek damages against only one of the potential defendants." *Webb v. ABF Freight System, Inc.*, 155 F.3d 1230, 1239 (10th Cir. 1998). Menges apparently elected to sue only his former employer.

## II. Discussion

*Legal Framework*

We review a district court's summary-judgment rulings de novo, "examin[ing] the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Pinkerton v. Colorado Dep't of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009) (internal quotation marks omitted). Applying the same legal standard as the district court, we will affirm "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The burden to show that no genuine issue of material fact exists is borne by the moving party. *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). In this case, ABF can satisfy that burden "by identifying a lack of evidence for [Menges] on an essential element of [his] claim." *Id.* (internal quotation marks omitted).

In deciding whether ABF was entitled to summary judgment, we look to whether Menges proffered sufficient evidence to permit a reasonable jury to conclude that the union breached its duty of fair representation, and if so, whether

the jury could also conclude that the breach contributed to an erroneous decision by the grievance committee. *See Webb*, 155 F.3d at 1239 (explaining the "causal connection" element). In this case, we agree with the district court that the evidence, viewed in Menges's favor, fails to establish a breach of the duty of fair representation as required to prevail on his hybrid claim. We therefore need not address the causation element.[2]

### *The Duty of Fair Representation*

"In light of a union's position as the sole and exclusive bargaining representative of an employee with his employer, every collective bargaining union has a duty to represent its members fairly in its dealings with management." *Id.* at 1239. As we explained in *Webb*, this duty prohibits a union from arbitrarily ignoring a meritorious grievance or processing it in a perfunctory fashion. Of course, a union also breaches its duty when it engages in discriminatory or bad-faith conduct in the course of handling a member's grievance. *See id.*

---

[2] We note that the requisite causal connection is between the union's breach of the duty of fair representation and an "erroneous outcome" to the grievance process. *Webb*, 155 F.3d at 1239. The district court therefore erred in requiring Menges to show a "causal connection between the union's alleged breach of the DFR and the employer's alleged breach of the CBA." App. at 344. That error was harmless, however, in light of the district court's determination that the duty of fair representation was not breached, a holding we affirm. We also note that "this court may affirm a grant of summary judgment on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result." *Bones*, 366 F.3d at 875.

Although Menges accuses his union representative Michael Ramos of engaging in much of this prohibited behavior, his evidence of bad faith hardly merits discussion.[3] Accordingly, we focus only on the issue of Ramos's alleged perfunctory performance in handling Menges's grievance. We made clear in *Webb* that perfunctory performance violates the duty of fair representation. *Id*, 155 F.3d at 1239-40; *see also Schwartz v. Bhd. of Maint. of Way Employes*, 264 F.3d 1181, 1185 (10th Cir. 2001) (holding that perfunctory union conduct may be actionable under *Webb* "in certain contexts or as a specific type of arbitrary conduct"). But we have also cautioned that "[t]he grievance process cannot be expected to be error-free." *Young v. UAW-LETC*, 95 F.3d 992, 997 (10th Cir. 1996) (internal quotation marks omitted). Accordingly, a member's mere dissatisfaction with a union representative's sub-par performance is not

---

[3]     Menges accuses Ramos of conspiring with members of the committee to tank his grievance because of a long-standing feud between them. Menges testified that he complained to Ramos's boss about him in 2005 because Ramos failed to discipline an employee who had disparaged Menges in front of his co-workers. Ramos recalled the incident vaguely during his deposition, and both men testified that nothing ever came of Menges's complaints. Without more, this evidence does not raise an inference that Ramos prosecuted Menges's grievance in bad faith, which "requires a showing of fraud or deceitful or dishonest action." *Young v. UAW-LETC*, 95 F.3d 992, 996-97 n.1 (10th Cir. 1996). "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones*, 366 F.3d at 875. Menges plainly believes that Ramos carried a grudge against him, but his speculation that this grudge resulted in a conspiracy to undermine his grievance is not sufficient to overcome summary judgment. We have reviewed the record in light of Menges's arguments and have found no evidence of fraudulent, deceitful, or dishonest conduct on the part of Ramos or any other union representative.

enough to establish a duty of fair representation claim. "Mere negligence, poor judgment, or ineptitude in grievance handling are insufficient to establish a breach of the duty of fair representation." *Id.* (internal quotation marks omitted).

The duty of fair representation *is* breached when the union's handling of a grievance falls "so far outside a wide range of reasonableness as to be irrational." *Schwartz*, 264 F.3d at 1185 (internal quotation marks omitted). Thus, in *Schwartz* we reversed an award of summary judgment in favor of the union where its bad advice had caused the plaintiffs to lose their jobs. We concluded the advice (that plaintiffs need not maintain leaves-of-absence while training for another position) was so unreasonable as to be irrational. *See id.* at 1184-87. Similarly, in *Webb* we deemed the union's representation of the discharged worker plaintiff to be so "perfunctory, apathetic, indifferent, and cursory" as to constitute a breach of the duty of fair representation. 155 F.3d at 1240.[4]

Menges fails to meet this standard despite the host of examples he cites as evidence of Ramos's deficient performance. Specifically, he cites twelve facts to "prove[] that the union was trying to sabotage his case." Aplt. Op. Br. at 29. For ease of discussion, we categorize his complaints as follows: (1) Ramos failed to emphasize helpful evidence at the grievance committee hearing; (2) Ramos

---

[4] The evidence in *Webb* suggested that the union affirmatively hurt the plaintiff's reinstatement chances by, inter alia, failing to file the appropriate grievance; failing to follow its established grievance procedure; wrongly telling the plaintiff his presence at the hearing was unnecessary; and disparaging the plaintiff in front of the grievance committee. 155 F.3d at 1240-41 n.14.

allowed the committee to hear damaging evidence irrelevant to Menges's discharge; (3) Ramos spent insufficient time preparing for the hearing; and (4) Ramos failed to coach Menges during his own statement.

*Ramos's Alleged Failure to Present Certain Evidence*

Citing his own affidavit, Menges claims that Ramos failed to tell the grievance committee that, contrary to the recklessness requirement for an Article 46 discharge, ABF's discharge letter characterized his driving as merely negligent. He also claims Ramos neglected to mention that according to the police report, both vehicles in the accident sustained only slight damage, which would appear to undermine the company's labeling of the accident as serious. Ramos testified that his strategy at the hearing depended on convincing the committee that Menges's accident was neither reckless nor serious. *See* App. at 160. Thus, if, as Menges argues, Ramos wholly neglected to make these points, a jury might reasonably conclude that such an omission was outside the range of reasonableness.

Menges admitted at his deposition, however, that Ramos made these very arguments to the grievance committee, testifying specifically that Ramos argued he had "not [been] found reckless, . . . as charged by the company." *Id.* at 264. It is also clear that the committee had before it the 2007 police report, which indicated that each vehicle involved in the accident suffered only slight damage. Even without Ramos's help, we think the committee could have deduced from this

report that the accident may not have been serious. In any event, we conclude that Ramos's failure to highlight specific sections of the police report was not so far outside a wide range of reasonableness as to be irrational, particularly in light of the arguments he did make. *See Young*, 95 F.3d at 998 (holding that union's failure to present a particular argument was insufficient to create a fact issue in light of its other efforts).

*Ramos's Alleged Failure to Keep Out Certain Evidence*

Menges also claims that Ramos allowed the committee to hear damaging evidence of his poor driving history, specifically, a police report from a 2005 accident and a handful of citizen complaints. He argues that under the CBA, such evidence was not admissible at the hearing because it was irrelevant to the circumstances surrounding the 2007 accident for which he was discharged. It is undisputed that the committee saw this damaging evidence, which was included in a packet of material prepared by the company. But it is also undisputed that Ramos objected to this evidence, and that at least with respect to the 2005 accident report, the objection was sustained. Menges argues that the objection came too late because the committee had already heard the damaging evidence. What he fails to explain, however, is what Ramos could have done differently. It appears the committee had the sole power to rule on evidentiary issues. As such, whether Ramos raised his objections early or late in the proceeding appears to

have been of little consequence–either way the committee had to see the evidence in order to rule on its admissibility.

Furthermore, even if Ramos's handling of this evidentiary issue was unreasonable, to defeat summary judgment, Menges must raise an inference that the inadmissible evidence tainted the committee's decision. *See Webb*, 155 F.3d at 1239 (explaining that there must be "substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings"). We are unwilling to assume that this element is satisfied. The 2007 accident report indicated that Menges's failure to yield at the intersection caused another driver to strike his truck so forcefully that the other driver's car spun 180 degrees. The committee could have reasonably concluded from this evidence alone that Menges recklessly caused a serious accident, sufficient to justify his discharge under Article 46. There is simply insufficient evidence that facts unrelated to the accident itself contributed to the adverse decision of the grievance committee.

*Ramos's Preparation and Coaching*

Finally, we turn to Menges's arguments concerning Ramos's lack of preparation and failure to coach him during his own statement. ABF fired Menges once before in 2005, but Ramos won his reinstatement through a successful grievance. In support of his perfunctory representation argument here, Menges claims that Ramos was better prepared to handle the 2005 grievance than

he was for the 2007 grievance. He offers nothing specific in support of this argument except for his own perception, offered by way of affidavit, that Ramos was not prepared. A perception that we note appears to conflict with Menges's own deposition testimony, where he admitted that Ramos delivered a prepared statement to the committee and objected to the company's evidence on his behalf. Without more, Menges's subjective opinion about Ramos's preparedness is not sufficient to raise a fact issue as to the reasonableness of Ramos's representation.

Finally, Menges complains that Ramos failed to remind him to tell the committee he was willing to take a non-driving job until his retirement even though he specifically asked Ramos to do so. Even accepting this allegation as true, Menges admits that he was given an opportunity to address the committee, and that nothing prevented him from making this statement on his own behalf. Ramos's failure to jog his memory hardly constitutes a breach of the duty of fair representation.

### III. Conclusion

Following Menges's termination, the union filed a grievance on his behalf and participated in all aspects of the grievance process. Union business agent Michael Ramos consulted with Menges before the grievance committee hearing, asserted arguments on his behalf, and objected to evidence submitted by the company. Menges was nonetheless dissatisfied with Ramos's performance. But as we have explained, compliance with the duty of fair representation neither

guarantees nor depends upon a satisfied union member. For the reasons explained above, we agree with the district court that Menges's evidence was insufficient to overcome summary judgment with respect to the legal sufficiency of the union's representation. Its judgment is therefore AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge